**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 17-270-DLB**

**ERIBERTO GONZALEZ**                                                                                    **PLAINTIFF**

**VS.**                     **MEMORANDUM OPINION AND ORDER**

**UNITED STATES OF AMERICA**                                       **DEFENDANT**

\*\*\* \*\*\* \*\*\* \*\*\*

Eriberto Gonzalez is an inmate who was recently confined at the Federal Correctional Institution (FCI) in Manchester, Kentucky. Proceeding without a lawyer, Gonzalez filed a complaint against the United States pursuant to the Federal Tort Claims Act (FTCA), challenging the sufficiency of the medical care he received at FCI-Manchester. (Doc. #1). The United States filed a motion to dismiss Gonzalez's complaint or, in the alternative, a motion for summary judgment (Doc. #12). Gonzalez having responded (Doc. #19), and the United States having replied (Doc. #22), this matter is ripe for review. For the reasons set forth below, the Court will **grant** the United States' motion for summary judgment.

**I.**     **FACTUAL AND PROCEDURAL BACKGROUND**

Gonzalez alleges that he experienced abdominal and colon-related problems while he was incarcerated at FCI-Manchester, and he claims that the medical staff at the prison provided him with care that fell below the applicable standard and caused him harm. (Doc. # 1) According to Gonzalez's complaint, he visited the prison's Health Services

1

Unit on three different occasions—once in September 2014, once in October 2014, and once in November 2014. *Id.* at 3-8. Gonzalez indicates that, on each occasion, he complained of abdominal pain and blood in his stool. (*Id.*). Gonzalez states that a member of the medical staff evaluated or examined him during each visit and repeatedly directed him to use hemorrhoid cream. (*Id.*). Gonzalez says that he followed these instructions and purchased hemorrhoid cream from the commissary. (*Id.*). Nevertheless, Gonzalez claims that his symptoms continued. (*Id.*).

Although Gonzalez alleges the foregoing facts in his complaint, the Government disputes his timeline and puts forth extensive evidence to support its version of events, including Gonzalez's medical records. (Doc. # 12). Those records show that the medical staff at the Health Services Unit conducted Gonzalez's initial health screening in March 2014 and then treated Gonzalez in April, May, June, September, and November of 2014. (Docs. # 12-5 at 2; #12-6 at 1-30). On those occasions, Gonzalez's health complaints were related to either a fungal infection on his foot or a rash on his hands, and the medical staff provided Gonzalez with various treatments. (*Id.*). Notably, Gonzalez's medical records suggest that he did not complain of abdominal pain, blood in his stool, or a similar problem at any of these appointments. (*Id.*). In fact, the records indicate that Gonzalez first complained of abdominal pain and blood in his stool in December 2014. (Docs. #12-5 at 2-3; #12-6 at 31-39).

Although the parties' disagree on the exact timeline of events, they agree that Gonzalez visited the Health Services Unit on December 2, 2014. (Docs. # 1 at 8; # 1-1 at 5; # 12-6 at 31). During that visit Gonzalez complained to medical staff of "abdominal pain . . . and blood in his stool x 5 days." (Doc. # 12-6 at 31). A Physician Assistant (PA)

2

provided Gonzalez with care, and checked his temperature, pulse, respiratory rate, blood pressure, and oxygen saturation level.  *Id.* at 31-32.  The PA also examined Gonzalez's abdomen and gastrointestinal system and ran a series of blood and lab tests.  *Id.* at 33-34.  The PA then ordered x-rays of Gonzalez's abdomen.  *Id.* at 34.  Although the x-rays came back negative, Gonzalez's labs were abnormal.  *Id.* at 37.  Therefore, the PA consulted with the prison's physician and decided to send Gonzalez to a local hospital emergency room.  *Id.*

At the hospital, Gonzalez indicated that his symptoms "started about 5 days ago" and were getting worse.  (Doc. # 12-7 at 2).  The emergency room staff then examined and treated Gonzalez, diagnosed him with colitis, and prescribed him multiple medications.  (Doc. # 12-6 at 40).  The hospital then transferred Gonzalez back to prison.  *Id.*

Three days later, Gonzalez returned to the Health Services Unit still complaining of abdominal pain and blood in his stool.  *Id.* at 48.  The PA and other members of the prison's medical staff provided Gonzalez with care and determined that his condition had not improved.  *Id.* at 48-50.  As a result, prison officials transferred Gonzalez back to the hospital, where medical professionals performed a colonoscopy and several blood transfusions, in addition to administering numerous antibiotic treatments.  (Doc. # 12-5 at 4).  Gonzalez was diagnosed with acute blood loss anemia from a lower gastrointestinal bleed caused by ulcerative colitis, and he remained at the hospital for over one month.  *Id.*

Gonzalez was discharged from the hospital in January 2015, and he continued to receive medical care at FCI-Manchester for a few weeks.  *Id.* at 4-6.  However, Gonzalez

was then transferred to another federal prison out of state. *Id.* at 6. Gonzalez was hospitalized again and, eventually, in March 2015, underwent a total colectomy. *Id.*

Gonzalez was not satisfied with the medical care he received from officials at FCI-Manchester and, thus, he pursued administrative remedies with the Bureau of Prisons. (Doc. # 1 at 1-2). However, Gonzalez's requests for relief were denied and, therefore, he filed this lawsuit against the United States pursuant to the FTCA. (Doc. # 1). Ultimately, Gonzalez claims that the medical staff at the prison provided him with care that fellow below the applicable standard and caused him harm, and he is seeking millions of dollars in damages. *Id.*

The United States now moves to dismiss Gonzalez's complaint or, in the alternative, asks for summary judgment. (Doc. # 12-1). The Government argues that Gonzalez's medical records show that he received prompt care consistent with that of a reasonable medical practitioner, and it maintains that Gonzalez has not put forth evidence of his own that supports a contrary conclusion. *Id.* at 15-19. The Government also argues that Gonzalez has not made out a case against the United States because he has not put forth expert testimony to support his FTCA claim. *Id.* at 9-14.

Gonzalez has filed a response to the Government's motion, as well as his own motion for summary judgment. (Docs. # 18, 19). Those submissions, however, are difficult to follow. As best as the Court can tell, Gonzalez suggests for the first time in his response that his colon problems are somehow related to his foot fungus. (Doc. # 19 at 1-2). He also spends a significant amount of time arguing about bicameralism and claiming that he is somehow being incarcerated in violation of his constitutional rights. (Doc. # 18). Gonzalez, however, does not dispute in any meaningful way the arguments

and evidence put forth by the Government. Gonzalez also does not offer his own evidence in response to the Government's motion; instead, he appears to largely rely on the allegations set forth in his complaint.

## II. ANALYSIS

Turning to the Government's dispositive motion (Doc. # 12), the Court will treat it as a motion for summary judgment because the United States has attached and relied upon documents and declarations extrinsic to the pleadings. *See* Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). Ultimately, the Court will grant the Government's motion because Gonzalez's case is unavailing.

Gonzalez has not pled a viable FTCA claim against the United States. As an initial matter, the extensive evidence submitted by the Government, and not refuted by Gonzalez, clearly demonstrates that the medical staff at FCI-Manchester provided Gonzalez with prompt, comprehensive care as soon as he complained about his abdominal and colon-related problems in December 2014. Therefore, for the reasons stated in the Government's motion and reply brief (Docs. # 12-1 at 15-19; 22 at 1-3), Gonzalez has not presented a valid claim for medical malpractice under the FTCA.

More importantly, even if the Court were to accept Gonzalez's timeline of events, he still cannot survive the Government's motion for summary judgment because he has not put forth expert testimony to support his case. To be sure, Gonzalez claims that the medical staff at FCI-Manchester provided him with care that fell below the applicable standard and caused him harm. However, Kentucky law applies to his case, *see Huffman v. United States*, 82 F.3d 703, 705 (6th Cir. 1996), and it provides that a plaintiff is generally required to put forth expert testimony to establish the relevant standard of care,

any breach of that standard, causation, and the resulting injury. *See Blankenship v. Collier*, 302 S.W.3d 665, 667, 675 (Ky. 2010); *Jackson v. Ghayoumi*, 419 S.W.3d 40, 45 (Ky. Ct. App. 2012). In fact, the Kentucky courts have clearly said that "[t]o survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006). Here, Gonzalez has not provided any expert testimony and has therefore failed to establish a prima facie case of medical malpractice.

The Court acknowledges and appreciates that Gonzalez's English-language skills are limited and that he has repeatedly asked the Court to appoint him an attorney to assist him with his case, including helping him obtain a medical expert's opinion. (Docs. #4, #17). However, despite Gonzalez's suggestions to the contrary, he does not have a constitutional right to counsel in this civil case, and this matter does not present the kind of circumstance that would otherwise justify either the appointment of counsel or an expert. *See, e.g., Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *Brown v. United States*, 74 F. App'x 611, 614-15 (7th Cir. 2003).

Finally, the Court recognizes that there is a "common knowledge" exception to the expert witness rule. This exception provides that, under certain limited circumstances, expert testimony may not be required in a medical malpractice case. *See Andrew*, 203 S.W.3d at 170. But this exception only applies in a situation in which "any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care," and it is "illustrated by cases where

the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy." *Id.* (citation and quotation marks omitted).

Gonzalez's claim does not meet this very narrow exception. At most, Gonzalez implies that the prison's medical staff was responsible for a delay during a critical time when he argues that the medical staff did not provide him with "timely treatment of a treatable medical condition." (Doc. #19 at 2). This Court, however, has recognized that these kinds of "delay-based allegations ... are fundamentally different from a surgeon leaving a foreign object in a person or operating on the wrong party of the body." *Earle v. United States*, No. 6:13-cv-184, 2016 WL 8814363, *6 (E.D. Ky. 2016). As the Court put it in *Earle*:

> Laypeople certainly are not competent, based on common, everyday experience, to judge relative injury causation or delay effect as to … highly complex area[s] of the body .... Particular cause(s) of [such an injury or complication] … surely may result from *many* factors that laypeople do not know how to accurately weigh or evaluate absent expert testimony on the subject.

*Id.* Kentucky courts have said essentially the same thing. *Jones v. Gaes*, No. 2009-SC-780, 2011 WL 1642225, at *3 (Ky. 2011) ("Absent expert testimony, a layperson is not competent to determine whether the alleged delay . . . in recognizing and treating [the plaintiff's] perforated colon was the proximate cause of her pain and suffering, the colostomy procedure, or her ongoing medical problems."). The same is true in this case. The common knowledge exception is inapplicable here and, as a result, Gonzalez's FTCA claim does not even get off the ground.

Finally, the Court must a resolve a procedural issue. Recently, an individual who is not a party to this case submitted medical and other documents into the record and

7

claimed to be doing so on Gonzalez's behalf. (Doc. # 25). However, Gonzalez did not sign this submission, as required by Rule 11 of the Federal Rules of Civil Procedure, and there is no indication that he intended for these documents to be part of the record. *Id.* Therefore, the Court will strike docket entry 25 from the record and direct the Clerk of the Court to maintain these sensitive documents under seal.

III. **CONCLUSION**

Accordingly,

**IT IS ORDERED** as follows:

(1) The Government's motion for summary judgment (Doc. #12) is **GRANTED**;

(2) All other pending motions in this case are **DENIED AS MOOT**;

(3) The Clerk of the Court shall **STRIKE** Docket Entry No. 25 from the record and shall also maintain the documents at that docket entry under **SEAL**; and

(4) A Judgment in favor of the United States will be entered contemporaneously entered in this matter

This 26th day of February, 2018.



Signed By:
*David L. Bunning*  DB
United States District Judge

K:\DATA\ORDERS\ProSe\Gonzalez 17-270-DLB Memorandum CDS.docx